IN RE ESTATE OF ADDIE FARR, DECEASED. FERN ALLEN ET
AL., APPELLEES, V. CLIFFORD D. FARR, EXECUTOR,
APPELLANT.

35 N. W. 2d 489

Filed January 10, 1949. No. 32438.

*Arthur A. Weber* and *Wells, Martin & Lane,* for
appellant.

*G. A. Farman, Jr.,* and *Julius D. Cronin,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an appeal from a judgment of the district court entered on the verdict of a jury denying probate to a purported last will and testament of Addie Farr, deceased. The will was contested by W. E. Farr, known as Gene Farr, and Fern Allen, son and daughter respectively, on the ground, among others, that it was procured by undue influence of Clifford D. Farr, another son and the proponent. Clifford D. Farr is appellant and W. E. Farr and Fern Allen are appellees.

On a trial to a jury in the district court a verdict was returned sustaining the contention of the contestants and denying admission of the will to probate. Judgment was entered on the verdict.

In an earlier opinion which appears as In re Estate of Farr, *ante* p. 67, 33 N. W. 2d 454, the judgment of the district court was reversed with directions to set aside the verdict and to adjudge that the instrument was the last will and testament of Addie Farr, deceased, and to cause the judgment to be certified to the county court.

The opinion was predicated upon the theory that there was not sufficient evidence to justify submission of the issue of undue influence to a jury.

After reargument and further examination and analysis we have concluded that we were in error in this respect and accordingly for the purpose of a decision herein the former opinion to the extent that it is in conflict herewith is withdrawn.

Except for errors assigned as to instructions tendered by proponent and refused and as to instructions given by the court on its own motion the only question for review is that of whether or not there was sufficient evidence upon which to submit to the jury the charge of undue influence.

The will which is the subject of the contest herein was executed by Addie Farr on October 30, 1945. She died January 2, 1947, at about the age of 81 years. By the terms of the will W. E. Farr was to receive $5; Elmo

Keller and Clesson Keller, grandchildren, $5 each; Thelma Holiday, a granddaughter, $100; Roy M. Farr, a son, a described quarter section of land; and Clifford D. Farr, the proponent, the residue of the real and personal estate subject to the payment of $1,000 in cash to Fern Allen, one of the contestants, within six months after the death of the testatrix.

The personal estate has not been described but as residue there are 320 acres of land and a house and lots in Newport, Nebraska, which by virtue of the residuary clause in the will would go to Clifford D. Farr. What this land and the house and lots are worth is made none too clear but they are of considerable value. It appears that Clifford D. Farr was to receive the entire estate of his mother except sufficient for payment of debts and funeral expenses, 160 acres of land, and bequests amounting to $1,115.

The will was offered in the county court and there, over objection of the appellees here, was admitted to probate. Appeal was taken to the district court where, as already stated, probate was denied. It was denied on the ground that the will was procured by undue influence.

As pointed out the assignments of error relate to instructions given and refused and to the question of whether or not there was evidence sufficient upon which to submit the question of undue influence. The assignments of error relating to instructions which require consideration will be discussed first.

The first of these assignments asserts that the court erred in refusing to give appellant's tendered instruction No. 7, the pertinent part of which is as follows: "Before you can find for the contestants, the contestants have the burden of proving by the preponderance of the evidence that (a) Addie Farr was a person who would be subject to such influence, (b) that Clifford D. Farr had an opportunity to exercise such influence, (c) that Clifford D. Farr was disposed to exercise such influence, and (d)

that the resulting will was the effect of such influence," and giving its instruction No. 10, the pertinent part of which is as follows: "You are instructed that in order for the contestants, Fern Allen and W. E. Farr, to prevail in this case on the ground of undue influence two things must be proven by them:—First: That undue influence was in fact exerted by Clifford D. Farr. Second: That it was successful in subverting and controlling the will of the testatrix, Addie Farr. Both of these facts must be proven by the contestants by a preponderance of the evidence in order to defeat the will on the ground of undue influence."

The appellant correctly asserts that in a will contest on the ground of undue influence the burden is on the contestant or contestants to establish by a preponderance the four elements enumerated in his tendered instruction No. 7. In re Estate of Bowman, 143 Neb. 440, 9 N. W. 2d 801; In re Estate of Hagan, 143 Neb. 459, 9 N. W. 2d 794, 154 A. L. R. 573; In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63. It is not error however for the court to refuse or fail to set forth separately the four in an instruction if their essentials are sufficiently contained in instructions given.

In the case of In re Estate of Keup, *supra*, this court considered an instruction in substance like instruction No. 10 given in this case which instruction was being subjected to the same criticism as here. In determining that the instruction was sufficient, it was said: "While the four elements must be established by the evidence to make a case sufficient to submit the issue to a jury and to sustain a verdict based thereon, however, it is not necessary that the court give an instruction setting forth the four elements separately provided they are sufficiently contained in the instructions given. We have examined the instructions given by the court and find they are sufficient." Here likewise we find that the instruction given in this respect was sufficient and that the assignment is without merit.

The next instruction excepted to is No. 11. It is discussed in argument along with instruction No. 12. It is urged that these two instructions read together placed matters before the jury concerning which there was no evidence and that they contained an overemphasis of certain matters. We think the contentions are without merit.

The first paragraph of instruction No. 11 is definitive of undue influence not inconsistent with instruction No. 10 and is introductory to cautionary provisions to the jury enjoining upon them a degree of care in weighing and considering the evidence altogether favorable rather than unfavorable to the appellant. The gist of the instruction was an emphasis upon the necessity for proof of the elements necessary to establish that a will was the result of undue influence. We fail to see how this could be ground for complaint on behalf of appellant.

Instruction No. 12 is also a cautionary instruction which cannot be calculated to favor the appellant, and also we think it cannot properly be considered as favoring the appellees. The part of the two instructions to which primary objection is obviously made is found in the fourth paragraph of instruction No. 11 and is in substance and in almost the exact wording of a pronouncement made in In re Estate of Noren, 119 Neb. 653, 230 N. W. 495, and repeated in the opinion in In re Estate of Bowman, *supra*. It cannot well be said that a cautionary measure imposed for guidance of this court in such situations as this becomes error when in a like situation the same measure of guidance is extended to a jury.

In another assignment of error instructions Nos. 11 and 12 are criticized on the ground that they invited the jury to speculate and permitted the drawing of improper inferences. They have been examined and we fail to find any reasonable basis for the criticism.

Appellant complains of instruction No. 14½ which is as follows: "If you find from the evidence that the will makes an inequal, unreasonable or unnatural disposition

of the property of the deceased, you may consider this fact along with all the other evidence in the case in determining whether or not the will is the result of undue influence, as defined in these instructions."

Appellant contends that there was no evidence upon which to justify a consideration by a jury of whether or not the disposition made by the will was "unreasonable or unnatural." He however does not contend that unreasonableness or unnaturalness of a disposition in a will if the contention is supported by evidence is not a proper issue.

Assuming but not yet deciding that a jury question was presented on the question of undue influence we are of the opinion that there was evidence from which a jury might properly infer that the disposition made by this will was unreasonable and unnatural. This evidence will not be pointed out here but it will become apparent in the later consideration of the case. We conclude that the assignment is without merit.

Appellant contends that the court erred in refusing to give his tendered instruction No. 8, the pertinent part of which is as follows: "You are further instructed that if you can reasonably draw contrary or opposing inferences from the facts as you find them on the evidence, one inference which might lead to a supposition of undue influence and a contrary inference that no undue influence was exerted by Clifford Farr, your verdict should be in favor of the proponent * * *." The substantial contention in this connection is that the jury should have been instructed if they could reasonably infer that there was undue influence and also infer that there was not that they were required to accept the latter and reject the former inference.

If we are to follow a line of pronouncements of this court beginning in 1889 and carrying through to April 1926, which line has never been directly overruled, it will become necessary to say that it was error for the

court to refuse to give this instruction or one of like import.

In Latham v. Schaal, 25 Neb. 535, 41 N. W. 354, in a syllabus point by quotation from Maynard v. Vinton, 59 Mich. 139, 26 N. W. 401, 60 Am. R. 276, this court said: "Influence, to vitiate a will, must be such as to amount to force and coercion, destroying the free agency of a testator, and there must be proof that the will was obtained by this coercion; and it must be shown that the circumstances of its execution are inconsistent with any hypothesis but undue influence, which cannot be presumed, but must be proved, and in connection with the will and not with other things." This is not an accurate quotation of what the Michigan court said but it does faithfully reflect the holding. The holding however was overruled by that court in Bush v. Delano, 113 Mich. 321, 71 N. W. 628. The pronouncement in Latham v. Schaal, *supra,* was followed and approved in Stull v. Stull, 1 Neb. (Unoff.) 389, 96 N. W. 196; Boggs v. Boggs, 62 Neb. 274, 87 N. W. 39; In re Estate of Dovey, 101 Neb. 11, 162 N. W. 134; and In re Estate of Kees, 114 Neb. 512, 208 N. W. 637.

It will be observed that the tendered instruction is in all substantial particulars the same as the quoted syllabus point except that the instruction employs the term "inference" whereas the syllabus point uses "hypothesis." The former term having more technical substance than the latter, the instruction was no less favorable to appellees than it would have been had the latter been used instead.

The later cases, while they do not overrule this pronouncement, do not include in the burden of proving undue influence sufficient to overcome a will the requirement that the evidence shall exclude inconsistency with any other hypothesis, or inference.

In In re Estate of Wilson, 114 Neb. 593, 208 N. W. 961, quoting from Seebrock v. Fedawa, 30 Neb. 424, 46 N. W. 650, it was said: "Where it is alleged that the

execution of a will was procured by undue influence, the burden is upon the party alleging it to establish that the testator was induced by improper means to dispose of his property differently from what he intended."

This statement was quoted with approval in In re Estate of Bayer, 119 Neb. 191, 227 N. W. 928. Also in the opinion it was said: "Mere supposition of undue influence is not sufficient to carry the case to the jury, but it must appear by proof, or by fair inference to be drawn from the facts established, that there was undue influence."

In In re Estate of Hagan, 143 Neb. 459, 9 N. W. 2d 794, 154 A. L. R. 573, it was said: "Considering first the issue of undue influence it may be stated here that the general rule is that the burden is upon the party alleging that a will was procured by undue influence to establish that the testator was induced by improper means so to make it."

In In re Estate of Bowman, *supra,* quoting from Ginter v. Ginter, 79 Kan. 721, 101 P. 634, 22 L. R. A. N. S. 1024, it was said: "In making his proof a contestant is not limited to the bare facts that he may be able to adduce, but he is entitled to the benefit of all inferences which may be legitimately derived from established facts."

The rules stated in these late cases were reiterated in In re Estate of George, 144 Neb. 887, 15 N. W. 2d 80.

It is made clear by these cases that in a case where a will is being contested on the ground of undue influence the contestant is entitled to have considered by the jury all evidence and all inferences reasonably to be drawn from the evidence. We think this should be the proper and accepted rule.

To hold that a hypothesis or inference that there was no undue influence is sufficient to defeat a contest of a will on the ground of undue influence would be to deny to a contestant the right to have his evidence weighed in its own light and in the light of reasonable inferences to be drawn from it.

This ought not to be true especially in the light of what usually confronts the court in a case of this kind as pointed out in In re Estate of Noren, *supra*, as follows: "Undue influence * * * is usually surrounded by all possible secrecy. It is almost always difficult to prove by direct and positive proof. It is largely a matter of inferences from facts and circumstances surrounding the testator, his life, character, and mental condition, as shown by the evidence, and the opportunity afforded designing persons for the exercise of improper control."

We hold that the court did not err in refusing to give requested instruction No. 8. The holdings of the cases cited herein in conflict with this conclusion are to this extent overruled.

There remains the question of whether or not there was sufficient evidence to sustain the verdict or in other words whether there was sufficient evidence upon which to submit the issue of undue influence to a jury.

As a background for this determination it appears necessary to set out certain of the family history and the circumstances which led to the making of the will in question.

In the immediate background of this controversy is the elimination of the interest of the deceased, Addie Farr, in two ranches in Rock County, Nebraska, and the division thereof between Clifford D. and W. E. Farr.

William E. Farr was the husband of Addie Farr and the father of Clifford D. Farr, W. E. Farr, Roy M. Farr, Fern Allen, and Gertrude Keller and the grandfather of Thelma Holiday, Elmo Keller, and Clesson Keller. He died testate on December 25, 1916. In his lifetime he purchased the nucleus of what is described in this record as the north and south ranches. He and his family lived on the south ranch from probably 1882 until about 1914 when he bought a store in Newport, Nebraska, where he moved his residence. He bought a house and some lots in Newport also. After his death

other lands were purchased which became a part of the two ranches.

By his will William E. Farr gave his widow the house in Newport and adjoining lots, one-fourth interest of all personal property, all personal effects, household goods, jewels and ornaments, and $500, and an undivided one-third of the south ranch. The three sons were given the remaining two-thirds of the south ranch, three-fourths of the personal property, all of the north ranch, and the store property including the connected lots.

The estate was heavily encumbered and the will required that the sons should pay off the indebtedness against the ranches, otherwise the land was to go to the widow. The two daughters were to be paid $3,000 each after the mortgages against the lands were paid off.

It became necessary later to refinance, so to facilitate this the two daughters released their liens. Later, apparently, they received the amounts provided for them in the will.

The ranches were operated by the mother and the three brothers on a partnership basis until 1927 when Roy surrendered his interest in the estate and withdrew. At some time not necessary to be made certain the store was closed and became no longer a part of the operations.

After Roy withdrew, the mother and the other two brothers continued to operate as a partnership. Over the years adjoining lands were purchased and depending upon the ranch which they adjoined they were added thereto and were treated and considered a part thereof.

In July 1945 it appears that difficulty arose between Clifford D. and W. E. Farr and they proceeded to effect a dissolution of the partnership operation. Also they proceeded to effect between themselves and with their mother a division and distribution of the ranches and the partnership funds.

As a first step the bank account was divided equally between the two brothers. Division of the real estate was not immediately agreed upon.

Agreement was finally reached in October 1945. By the agreement W. E. Farr was to receive the south ranch and Clifford D. Farr was to receive the north one except 320 acres which the mother was to receive free of encumbrance. The mother was to receive the quarter section of land not referred to as a part of either the north or south ranch.

On October 24, 1945, instruments of conveyance and transfer were duly executed and delivered making effective the agreement. The brothers made division of the personal property. Thus the partnership was dissolved and the three parties became sole owners of separate properties.

After this it appears that Clifford D. Farr was in charge of his mother's interests and such moneys as came to her were carried in his account. There is no authentic information that he accounted to her for his stewardship in this respect. There is no suggestion intended that in this the mother was unfairly dealt with by her son.

After these events, up to and at the time of her death Addie Farr had the half section of land which had been a part of the north ranch, the other quarter section referred to, the house and lots in Newport, and the contents of the house. She left surviving her the children and grandchildren already named herein except Gertrude Keller who predeceased her.

On January 20, 1941, Addie Farr deposited a will with the county judge of Rock County, Nebraska, which was withdrawn October 30, 1945. It was withdrawn six days after the settlement with her two sons. From the testimony it would appear that by this will Roy M. Farr was to receive the quarter section of land not referred to as a part of any ranch, Fern Allen was to receive the home in Newport and the furniture and furnishings, and Elmo Keller and Clesson Keller were each to receive $5. The residue was to go to W. E. and Clifford D. Farr subject to debts.

The will of October 30, 1945, directed the payment of debts and funeral expenses. It gave to W. E. Farr, Elmo Keller, and Clesson Keller $5 each, and to Thelma Holiday $100. It gave to Roy M. Farr the same quarter section of land as was given in the former will. It gave the remainder of her property, real, personal, and mixed to Clifford D. Farr subject to the payment of $1,000 to Fern Allen within six months of the death of the testatrix.

It is this will that the contestants contend was procured by undue influence of Clifford D. Farr.

The elements necessary to be established in order to overturn a will on the ground of undue influence having already been stated herein, the proposition will not be restated.

It should be stated here that it is not the function of this court to determine the question of whether or not undue influence was established but only the question of whether or not there was sufficient evidence to justify the submission of that question to a jury and to sustain a verdict finding that the will was the result of undue influence. On this proposition there is no disagreement between the parties.

The elements will be discussed separately. There can be little if any doubt that there was evidence that Clifford D. Farr had ample opportunity to exercise influence over his mother. We think it fair to say that through the years after the death of William E. Farr he was her chief adviser and confidant and that when need or desire on her part arose he was the one who conducted her affairs. There is no evidence of a lack of cordial relationship with the other children but it was upon Clifford that she leaned. During the period between July 1945 and October 24, 1945, the dissolution of the partnership was discussed by the two of them apparently out of the presence of others. On October 30, 1945, Clifford took her to the scrivener and was present while the will was being drawn and when it was executed. It cannot well be said in the light of all this that there was a lack of evidence of

opportunity for Clifford D. Farr to exercise influence.

Was there evidence from which the jury could reasonably infer that Clifford D. Farr had a disposition to influence his mother? We think there was.

As indicated the negotiations for dissolution of the partnership extended over a considerable period of time. It reasonably appears that the delay was largely occasioned by dissatisfaction of Clifford D. Farr with what W. E. Farr proposed. It also reasonably appears from the evidence that this dissatisfaction was communicated to the mother by Clifford. It is reasonably inferable that it was on the basis of this communicated dissatisfaction that the mother was induced to agree to make a new will and later to make this one which greatly enlarged the interest to be taken by Clifford of the estate of his mother. Such a conclusion is evidenced abundantly by the testimony of Clifford generally and particularly by the following: "Q Now then you had in the back of your mind, did you, when you made the deal, that you were going to get this 320? A I felt pretty confident that I would. Q So that when you made the deal you thought you had a half section that wasn't in the figures, and you were going to have that much the best of Gene? A No, I didn't, not the best of him; I figured I was about even with him. Q In other words, in your agreements with him to settle on the proposed figures you talked about here, you knew at that time that you were going to get this half section, that that would belong to you after your settlement? A I figured mother would be fair, and knew she would do the right thing, which she did."

Coupled with this is the fact that though Clifford knew of his mother's intention and later her act, and though it affected materially his living sister and his brother W. E. very materially and substantially he communicated the information to no one of them until after the death of his mother. There appears in this sufficient to sustain a verdict the effect of which was to say that Clifford D. Farr had a disposition to influence his mother.

Was the testatrix subject to influence? The very fact that she was influenced was convincing evidence that she was subject to influence. The evidence of Clifford D. Farr already adverted to is evidence to indicate that she was influenced to make the new will by his dissatisfaction with the proposals of W. E. Farr.

Was the result accomplished sufficient to permit a jury to say that it appeared to be the effect of undue influence? Clearly the evidence was sufficient to permit a jury to say that the will was made under the influence of protestations made by Clifford D. Farr.

Was it sufficient to permit a jury to say that the influence was of such a character as to destroy the free agency of the testatrix and to substitute the will of Clifford D. Farr for her own? In the light of controlling legal principles we think it was. See, In re Estate of George, *supra;* In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513; In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37; In re Estate of Johnston, 147 Neb. 886, 25 N. W. 2d 526.

As has been pointed out in the cases cited the jury was not limited in its consideration to the bare facts adduced but, for reasons already set out, it was entitled to consider all reasonable inferences which were derivable from the established facts.

The jury had for consideration all that has already been pointed out herein and also evidence as to the value of the two ranches after division. They could readily on the evidence have concluded that the division was not unfavorable to Clifford. They obviously found that the sister was cut off with $1,000 whereas the property designated to go to her by the former will was of considerably greater value. They obviously found that it was the earlier intention of the testatrix to favor, and equally, Clifford D. and W. E. since the two of them, shoulder to shoulder with her through the years, had struggled to keep the estate together and remove its burdens. They could have found reasonably that instead Clifford was greatly favored over W. E. They could have found that

the will was executed pursuant to a secret arrangement between the testatrix and the chief beneficiary and that it was kept secret by the chief beneficiary until after the death of the testatrix with questionable motives. They of course found that the testatrix at the time she made the will was in age near four score years.

Taking into consideration all of the facts as disclosed by the record and the reasonable inferences proper to be drawn therefrom by a jury and considering them in the light of applicable legal principles we are unable to say that the evidence was insufficient to sustain the verdict of the jury.

The judgment of the district court is affirmed.

AFFIRMED.