IN RE ESTATE OF RUTH B. ZORN, DECEASED.
ROY O. BUCHANAN ET AL., APPELLANTS, V. HOWARD B. ZORN, APPELLEE.
99 N. W. 2d 773

Filed December 11, 1959. No. 34544.

*Heaton & Heaton* and *Wright, Simmons & Harris,* for appellants.

*Martin, Davis, Mattoon & Matzke, Maupin, Dent, Kay & Satterfield, James O. David,* and *James J. Duggan,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This action was originally instituted by petition of Roy O. Buchanan filed in the county court of Cheyenne County, Nebraska, for the probate of the last will and testament of Ruth B. Zorn, deceased. Objections to probate of the will were filed by Howard Zorn, also referred to in the pleadings as Howard B. Zorn, the only son and heir of the deceased. There were numerous objections but those requiring mention here are that the will was the result of undue influence exerted upon the mind of the testatrix and that it is not her will, and that the testatrix lacked testamentary capacity when she executed the instrument. There was an answer controverting the objections. A hearing was had in the county court after which the will was duly admitted to probate. From the adjudication admitting the will to probate the objector, Howard B. Zorn, appealed to the district court.

In the district court Roy O. Buchanan filed a petition for probate of the will of Ruth B. Zorn. By the

petition it was alleged that Ruth B. Zorn died on June 15, 1957, leaving a last will and testament. The will was not made a part of the petition in the district court but it was by reference made a part of the petition in the county court. There is however no controversy about its contents. The petition named Howard B. Zorn, a son, as the only heir at law. Roy O. Buchanan, a brother, Ray Buchanan, a brother, and Betty Buchanan Wholford, a niece, were named as other persons interested in the estate of Ruth B. Zorn.

The will is dated July 27, 1953. It was drafted by Paul Rhodes, an attorney of Bridgeport, Nebraska. It was witnessed by Clark Willhite and Margaret Skarboe. To the extent necessary to state here, by the terms of the will Howard B. Zorn was to receive $1. Nellie B. Cox, Roy O. Buchanan, and Ray Buchanan were each to receive one-third of the real estate provided that they were living at the time of the death of the testatrix. In case of the death of any of them before the testatrix, then the real estate should be divided equally between those remaining. Incidentally Nellie B. Cox did predecease the testatrix. The personal estate was to go to Betty Buchanan Wholford.

To the petition Howard B. Zorn filed an answer in which he objected to the probate of the will on the same grounds he asserted in the county court.

Thereafter Roy O. Buchanan and Ray Buchanan moved for summary judgment which if sustained would have required admission of the will to probate. In the light of the review of the entire record the conclusion reached is that neither this proceeding nor the determination made by the district court thereon requires any consideration by this court. At the time the motion for summary judgment was filed Ray Buchanan joined as a proponent in the proceedings.

The case was tried to a jury on the issues presented by the petition for probate filed by Roy O. Buchanan, proponent, and the objections thereto by Howard B.

Zorn, the contestant. The jury returned a verdict in favor of the contestant and against the proponents. An appropriate judgment was rendered on the verdict. A motion in substance for judgment notwithstanding the verdict or for new trial was made and in due course overruled. From the judgment and the order overruling the motion for judgment notwithstanding the verdict and the motion for new trial the proponents have appealed. They will be referred to as appellants. Howard B. Zorn, contestant, will be referred to as appellee.

At the conclusion of the evidence of the appellee a motion was made in effect to remove from the consideration of the jury the question of the mental competency of the testatrix and to find in favor of the appellants in this respect. This motion was sustained. No appeal from this finding was taken by the appellee. That issue is not before this court for consideration.

At that time also the appellants in substance moved for an order removing from the consideration of the jury the question of undue influence and for a finding that the evidence was insufficient to sustain the charge that undue influence had been exercised on Ruth B. Zorn with reference to the making of the will. This motion was overruled. This motion was renewed after the evidence in the case on the issues was concluded. It was again overruled.

In the light of this state of the record it becomes clear that the only issue submitted and the only one on which the jury made a finding was that of whether or not the will of Ruth B. Zorn was the result of undue influence.

By assignment of error the appellants contend that the case should not have been submitted to the jury for the reason that the evidence adduced was insufficient upon which to submit the issue of undue influence.

A review of this question by this court must be made in the light of certain well-established principles con-

cerning which there is no dispute. The statement of these principles appears with citations and quotations from other decisions of this court in Reynolds v. Knott, 164 Neb. 365, 82 N. W. 2d 568. In that case it is said:

"A testator may dispose of his property as he pleases. The law does not require that he recognize his relatives therein nor does it put any obstacle in the way of the aged or infirm in making disposition of their property by will; provided, only, that their mentality conforms to the accepted tests at the time of the execution of such testamentary instrument and same was not procured by undue influence.

"In a will contest upon the ground of undue influence the burden is upon contestants to prove by a preponderance of evidence, which as a whole is of such a substantial nature as to contain some competent and relevant proof of each and all of the following elements: (1) That testator was subject to undue influence; (2) that there was opportunity to exercise undue influence; (3) that there was a disposition to exercise undue influence for an improper purpose; and (4)' that the result was clearly the effect of such undue influence.

"Undue influence cannot be inferred from motive or opportunity alone. There must be competent evidence, direct or circumstantial, to show that undue influence not only existed but that it was exercised at the very time the will was executed. * * *

"In order to invalidate a will duly executed by a testator having testamentary capacity, undue influence must be of such character as to destroy the free agency of the testator and substitute another's will for his own.

"In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom.

"It is the duty of trial courts to determine the issues upon which there is competent evidence and submit them, and them only, to the jury. * * *."

The application of these principles must be made in the light of what developed on the trial as disclosed by the bill of exceptions. This bill of exceptions contains over 900 pages and in addition more than 100 exhibits. The first 112 pages consist of evidence adduced by the appellants. It is in proof of proper execution of the will and mental competency of the testatrix. As pointed out these are not matters remaining for review by this court. The remainder of the bill of exceptions, except a few pages of rebuttal, consists of evidence from witnesses called to testify on behalf of the appellee. It is obvious therefore, in the light of the voluminous record, that there may not herein be a summary of the testimony of the witnesses who testified.

There is however another and cogent reason why there shall be no lengthy summary. That reason is that in the light of the stated controlling legal principles no evidence has been adduced which directly or by reasonable inference supports the contention that the will of Ruth B. Zorn dated July 27, 1953, was the result of undue influence by any party in interest or by any other person.

In order that the situation involved shall be understood, it is pointed out that Albert C. Zorn and Ruth B. Zorn were husband and wife. They had one child, Howard B. Zorn. On and prior to July 25, 1953, Albert C. Zorn was the owner of three quarter sections of land in Cheyenne County, Nebraska. On July 25, 1953, Albert C. Zorn conveyed this land by quitclaim deed to Ruth B. Zorn. On July 27, 1953, Ruth B. Zorn, apparently unaccompanied by anyone, went to Bridgeport, Nebraska, and to the office of Paul Rhodes, an attorney at law, who drafted the will which is the subject of this action. The will was signed in the presence of two

persons who signed as witnesses. These witnesses were not previously known by Ruth B. Zorn. The will was placed in the safe of the attorney where it remained until after the death of Ruth B. Zorn in 1957. After the will was executed and on the same day, Ruth B. Zorn went to the home of her brother in Dalton, Nebraska, where she received medical attention and treatment from a doctor. The arguments of the appellee suggest that this attention and treatment may have been before the execution of the will, but the suggestion, on the record, is untenable. Albert C. Zorn died October 13, 1954. It was known as early as the autumn of 1952 that he was suffering from an ailment which was destined to be fatal. At least from and after the will was executed Ruth B. Zorn spent a considerable amount of time in the homes of Ray Buchanan and Roy O. Buchanan, and in hospitals. She was not in good health but it does not appear necessary to set forth the details as to her condition. After the will was executed and until the time of her death she had close contacts with her two brothers as well as others who were related to her by blood or marriage.

In all of the evidence however from which this background has been drawn there is none, direct or circumstantial, the effect of which is to say that the appellants or anyone else, before the will was executed, sought to influence her in the making of this or another will. This is also true as of the date of making the will. It is further true that the evidence fails to disclose that any person or persons even knew that she contemplated the making of the will or that she had made it even up to the time of her death except the testatrix, the attorney who drafted it, and the two·persons who signed it as witnesses. The only thing from which an inference may be drawn that anyone other than these four had any information of any kind or character as to its existence prior to her death is a statement by the attorney who drew the will that Ray

Buchanan and Roy O. Buchanan came to his office on or about the day of the death of Ruth B. Zorn. It was on that day that a petition for probate was prepared and signed by Roy O. Buchanan. No inquiry was made of this witness as to whether Roy O. Buchanan and Ray Buchanan came on account of prior knowledge of the existence of the will or on account of information disclosed by him that he had the will.

In the light of the stated controlling principles and this absence of evidence of undue influence the trial court erred in submitting the issue of undue influence to the jury for determination. The motion made by the appellants at the close of the evidence to withdraw the issue of undue influence from the jury or in the alternative to direct a verdict for the appellants should have been sustained. It follows that the court should have sustained the appellants' motion for judgment notwithstanding the verdict.

In Hamilton v. Omaha & C. B. St Ry. Co., 152 Neb. 328, 41 N. W. 2d 139, it is said: "If a motion for directed verdict made at the close of the evidence in a case should have been sustained for want of evidence to support a verdict in favor of the party against whom made, it is the duty of the court on motion for judgment notwithstanding the verdict timely made to sustain such motion to set aside the verdict and to render judgment pursuant to the motion for directed verdict." See, also, Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603; Hickman v. Parks Constr. Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040.

The brief of appellants contains numerous assignments of error in addition to the one considered, but in the light of the determination made on this one the others do not require discussion.

The judgment of the district court is reversed and the cause remanded to the district court with directions to render the judgment notwithstanding the verdict requested by the appellants, and in accordance with that

action to render judgment admitting the will to probate. REVERSED AND REMANDED WITH DIRECTIONS.