DONALD J. VIETZ, APPELLANT, v. TEXACO, INC., A FOREIGN CORPORATION, ET AL., APPELLEES.

203 N. W. 2d 513

Filed January 19, 1973. No. 38463.

Merritt E. James, for appellant.

Cline, Williams, Wright, Johnson & Oldfather, Fredric H. Kauffman, Kenneth Cobb, and Nelson, Harding, Marchetti, Leonard & Tate, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The plaintiff, Donald J. Vietz, was injured on March 21, 1968, when he was struck on the shoulder by an overhead door at the filling station where he was employed. The door closed suddenly when one of the two coil springs used to hold the door in a raised position broke unexpectedly. The principal defendants are Texaco, Inc., the owner of the station, and Yant Equipment Co., Inc., which had performed maintenance work on the door.

The trial court dismissed the action at the close of the plaintiff's evidence. The plaintiff appeals contending that the trial court erred in dismissing the action.

The second amended petition alleged that the defendant Texaco was negligent in failing to maintain the door in a safe condition; and in failing to replace the overhead springs and door which were defective. The defendant Yant was alleged to have been negligent in failing to replace the springs which were weak, of improper size, and inadequate; and in overtightening the springs so that they were weakened and dangerous.

The door which injured the plaintiff was approximately 10 feet wide, 9 feet high, and weighed 300 pounds. There were rollers on the sides of the door which ran in tracks fastened to the building. Cables attached to each side of the door were fastened to drums on a shaft located above the doors. The shaft was spring-loaded so that a part of the weight of the door was carried by the springs when the door was in a closed position. The springs were approximately 24 inches long and 3½ inches in diameter.

The building was constructed in 1958 and leased to Henry Knaub, the plaintiff's employer, in December of that year. The building had two overhead doors. After about 2 years some difficulty developed with respect to

the overhead doors. There was difficulty with both doors but there seemed to be more trouble with the north door, which was the door that injured the plaintiff. Apparently the building had settled unevenly with the result that the overhead doors would not raise and lower properly. When the north door was closed there was a space of 1 inch to 1½ inches between the door and the floor at the north edge. When the north door was raised it would bind when the bottom of the door had been raised about 7 feet. This was caused by a misalignment at a joint in the track. To assist in raising the door the springs had been tightened. This caused the north spring to "buckle" or become "wavy."

The plaintiff testified that after the door had passed through the place where it would bind, "it would slam real fast, and then the return spring would kick it back down." Knaub testified that there were times when the springs would be so tight that the door would come out of the bind "like a shotgun blast and bounce back and go back into a bind."

The lease between Texaco and Knaub provided that the lessee would maintain the building in good repair. There was evidence which indicated that Texaco assumed and performed the duty to repair the building. There was an issue as to whether this was gratuitous, but for the purpose of this opinion we assume the evidence was sufficient to sustain a finding that Texaco was obligated to maintain the building, including the overhead doors, in good repair.

The actual repairs were made by employees of the defendant Yant. Yant was an independent contractor, so any negligence of Yant or its employees would not be imputed to Texaco. There was evidence of complaints to Texaco about the operation of the doors but the plaintiff did not contend that Texaco was negligent in selecting Yant to make the repairs.

The evidence is that upon request Yant would send one or more of its employees to make repairs. So far

as the north overhead door was concerned, these repairs consisted of tightening the springs. There is no evidence that the springs were weak, of improper size, or inadequate. There was no evidence that the springs had been overtightened except from inferences that might be drawn from the testimony concerning the operation of the door and attempts by the plaintiff to testify directly that the springs had been overtightened. These latter statements were properly excluded as conclusions by a nonexpert witness except insofar as they related to conversations which were admitted for the limited purpose of proving notice.

The plaintiff testified that after the accident the north spring on the north door looked like it was broken in two places. The spring itself was not produced. Apparently it was never examined, tested, or otherwise examined prior to the accident or afterwards. There is no evidence as to the cause of overhead door spring failures. The evidence indicates that the spring which broke had been in use for 10 years. A witness who had been in the overhead door business for about 20 years and who examined the door at the plaintiff's request approximately 3 years after the accident, testified that the springs then in place were the proper size; that the door worked good for an old door; and that the door was slightly out of adjustment "but a little tightening on the spring would fix it."

Negligence is a question of fact which may be proved by circumstantial evidence, but the facts and circumstances proved, together with the reasonable inferences that may be drawn from them, must indicate with reasonable certainty the negligent act complained of. McAlexander v. Estate of Lewis, 167 Neb. 524, 93 N. W. 2d 632, 77 A. L. R. 2d 575. Where several inferences may be drawn from the facts proved, which inferences are opposed to each other but are equally consistent with the facts proved, the plaintiff may not sustain his position by a reliance alone on the inference which

would entitle him to recover. Norcross v. Gingery, 181 Neb. 783, 150 N. W. 2d 919; Haynes v. County of Custer, 186 Neb. 740, 186 N. W. 2d 483.

The controlling question in this case is what caused the spring to break. It is common knowledge that all metals that are flexed may break eventually. The plaintiff's theory was that the spring broke because it had been negligently overtightened. There is no evidence to support this theory other than the testimony as to the operation of the door during the 10 years that the spring was intact. An inference might be drawn from this evidence that the spring had been overtightened but it is not the only inference that could be drawn from the evidence. It may well be that the spring broke because it was worn out and not because of any negligent act of the defendants. The evidence did not show with reasonable certainty the negligent act complained of.

The motion to dismiss the action was properly sustained. The judgment of the district court is affirmed.

AFFIRMED.