IN RE ESTATE OF CLARA GLOE, DECEASED.
ROBERT SPINAR, APPELLANT, V. VIOLA WALL ET AL.,
APPELLEES.
215 N. W. 2d 98

Filed February 28, 1974.   No. 39196.

Herman Ginsburg and Jack L. Craven, for appellant.

Steinacher & Vosoba, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and HASTINGS, District Judge.

McCOWN, J.

This is an action to contest the admission of a will to probate. Nephews and nieces alleged a lack of testamentary capacity, and undue influence exerted upon the testatrix. The will was admitted to probate in county court. The contestants appealed to the District Court. On trial in the District Court, the issues of testamentary capacity and undue influence were submitted to the jury. The jury found Item V, the residual provision, invalid because of undue influence and found the rest of the will to be valid. The District Court entered judgment on the verdict and the proponent of the will has appealed.

Clara Gloe died July 9, 1970, at the age of 85, leaving a probate estate of $432,659.89. She was a widow who had no children or grandchildren. She had 10 brothers and sisters, 7 of whom predeceased her. Four sisters, however, were living on the date of execution of the will and are the four individuals named in the critical Item V of the will. She also had 19 nephews and nieces.

The testatrix lived on a farm near Crete, in Saline County, Nebraska. She had lived in extremely frugal fashion during her lifetime. She did not spend money on clothing, furniture, or household goods. She slept on a cot in the kitchen near a wood and cob burning stove which she used for heat. Her quarters were smoked and dirty. She worked hard, but spent little. Visits from her family were infrequent prior to 1967. Louise Davis, a sister of the testatrix, and Mary Vasak, an old friend of the testatrix, began taking care of her business affairs in the spring of 1967 under a power of attorney.

In July 1967, testatrix was hospitalized with an infection, and arteriosclerosis with possible cerebrovascular insufficiency was diagnosed. When the testatrix was released from the hospital, her sister, Emma Gloe, who had lived in Lincoln, Nebraska, came to live with her. From that time on testatrix' sisters, Helen Hall and Louise Davis, and testatrix' longtime friend, Mary Vasak, who lived in Crete, Nebraska, were frequent visitors. The fourth living sister, Matilda Mennenga, lived in California. Between September 4, 1967, and August 12, 1968, the testatrix made gifts by checks to her four living sisters and the descendants and spouses of two of them in the total sum of $119,500. She also made two gifts to Mary Vasak which totaled $9,000.

The record does not indicate that Clara Gloe had made a will before 1968. From March 9, 1968, to January 14, 1969, Clara Gloe made four separate wills, drafted by three different attorneys. In each of the

four wills the testatrix left all the residue of her property one-fourth to each of her sisters, Emma Gloe, Louise Davis, Helen Hall, and Matilda Mennenga. The four wills were executed in March of 1968, June of 1968, August of 1968, and January of 1969, respectively. The will of January 14, 1969, was the one admitted to probate, and the residual provision to the four sisters was the paragraph which was found by the jury to be invalid because of undue influence. Other provisions of the will bequeathed $5,000 each to two nephews and one niece; $10,000 to the Crete Memorial Hospital; and $10,000 in trust for a longtime employee for his lifetime with the balance to the same hospital. The final paragraph of the will appointed Robert Spinar as executor. Spinar had been appointed as conservator for the testatrix in November of 1968.

The overall pattern of the four wills, as well as the residual clause, was essentially similar. Major differences were that 12 nephews and nieces were left $10 each and 7 nephews and nieces were left $5,000 each in the first will of March 1968. Subsequent wills omitted all legacies to nieces and nephews except the three $5,000 bequests, and made changes in executors and trustees. Under the January 14, 1969, will, after the payment of the $35,000 of specific bequests, the remainder of the estate was left one-fourth to each of the four sisters under Item V of the will.

The four wills were apparently executed in each instance at the instigation of either Emma Gloe and Helen Hall, on the one hand, or Louise Davis and Mary Vasak, on the other, and the record indicates the activities of both factions in dealing with the affairs of the testatrix. There is evidence that on various occasions Emma Gloe had hid the testatrix' canceled checks, bonds, bank book, and purse, and that the actions upset the testatrix. Mary Vasak, a longtime friend of the testatrix, kept a diary of her contacts with the tes-

tatrix and her family. That diary and Mary Vasak's testimony were the primary sources of evidence of undue influence. There was also evidence from Emma Gloe's son, Alvin, that Louise Davis thought she was going to get all the testatrix' property when the testatrix died. There is evidence that both physical and mental pressures were used on the testatrix. Emma Gloe threatened to leave when the testatrix needed someone with her and was rude to friends who came to call. She shook her fist at the testatrix in the yard on one occasion, telling her that she had better go downtown and sign some paper as Helen Hall had directed. There is evidence that Emma Gloe pushed the testatrix to the floor on one occasion and hit her with a shovel on another, although both incidents were denied. Numerous occasions are recorded in the "diary" of specific expressions of frustration and helplessness on the part of the testatrix. She stated on one occasion: "I have to do just what they want all the time." On another: "I have to do as they say. There is nothing else I can do." And on another: "One tells me this and the next that. I don't know what to do any more."

The issues of testamentary capacity and undue influence were both submitted to the jury under instructions that it might find and determine that all or only a portion of the will was invalid because of undue influence. The jury determined that Item V was invalid because of undue influence and found the rest of the will to be valid. Item V provided:

"I give, bequeath and devise all of the rest, residue and remainder of my property, both real, personal or mixed, and wheresoever situate, as follows:

One-Fourth (1/4) to my sister, Emma Gloe;

One-Fourth (1/4) to my sister, Louise Davis;

One-Fourth (1/4) to my sister, Helen Hall, and

One-Fourth (1/4) to my sister, Matilda Mennenga, to be theirs absolutely."

The proponent's assignments of error are based primarily on the contention that the evidence of undue influence was insufficient to meet the burden of proof placed upon the contestants, and that the issue of undue influence should not have been submitted to the jury. It is asserted that the trial court should have sustained the motion for a directed verdict in favor of the proponent.

In a will contest upon the ground of undue influence, the burden is upon the contestants to prove by a preponderance of the evidence: That the testatrix was susceptible to undue influence; that opportunity to exercise it existed; that there was a disposition to exercise it; and that the result clearly appears to be the effect of such influence. In re Estate of Bainbridge, 151 Neb. 142, 36 N. W. 2d 625. Undue influence is largely a matter of inferences from facts and circumstances surrounding the testatrix, her life, character, and mental condition, and the opportunity existing for the exercise of improper control. See In re Estate of Bainbridge, *supra*. In a will contest where undue influence is alleged, that issue should be submitted to the jury when the facts and circumstances proved, together with inferences fairly deducible therefrom, are such that reasonable minds might conclude that the will was not the free and voluntary act of testatrix but the result of undue influence exercised upon her. See Cook v. Ketchmark, 174 Neb. 222, 117 N. W. 2d 375. Here there was evidence, together with the inferences fairly deducible from it, tending to prove each of the four essential elements of undue influence and the issue was properly submitted to the jury.

Other assignments of error challenge some of the instructions because they authorize the jury to find that a provision beneficial to several individuals, one of whom is innocent of personal misconduct, may be invalidated as to the innocent individual because of un-

due influence exerted upon the testatrix by other persons. The basic contention is that Matilda Mennenga was not present in Nebraska and there is no evidence that she took part in the activities of any of the other persons charged with undue influence. Therefore it is argued that the part of Item V which benefits her should be retained as though it were contained in some other paragraph or provision of the will which was untainted by undue influence.

To support this position, the proponent relies upon In re Estate of Kajewski, 134 Neb. 485, 279 N. W. 185. That case held that where a will contains a bequest due to undue influence, the will may stand as to other bequests not so procured. The case also lends support to the general rule that where a part of a will is valid and part is invalid, the valid bequests should be sustained unless that would do injustice to the beneficiaries under the will or defeat the general intent of the testatrix. See Estate of Koller, 116 Neb. 764, 219 N. W. 4. Neither of those cases offer much comfort to the proponent here.

The portion of Item V which benefits Matilda Mennenga is an inseparable and integral part of Item V and under the evidence it was as much the result of undue influence as the rest of the paragraph. The contention that a benefit received by an individual as a result of undue influence ought to be sustained simply because she did not personally participate in bringing the undue influence to bear on the testatrix must be rejected. Item V benefited the four sisters equally. It cannot be said to be invalid as to the three sisters who actively exerted undue influence upon the testatrix but valid as to Matilda Mennenga who benefited equally by their actions.

The jury verdict found all of Item V to be invalid by virtue of undue influence and it is essentially immaterial which individual or individuals were guilty of

exercising the undue influence which produced Item V. Undue influence exercised by anyone, whether he or another gains by its exercise, renders the will or part thereof thus procured worthless. See Scholting v. Scholting, 183 Neb. 850, 164 N. W. 2d 918. Item V of the will here was wholly invalid and the instructions properly presented the issues to the jury.

The other assignments of error are without merit. The judgment of the District Court is affirmed.

AFFIRMED.