IN RE ESTATE OF ELSIE A. KLEEB, DECEASED. STEWART KLEEB, APPELLEE, V. VELMA JEZBERA AND WILMA ASKEY, APPELLANTS.

320 N.W.2d 459

Filed June 4, 1982. No. 44199.

Schaper and Schaper, and Wolfe, Hurd & Rierden, for appellants.

Steven O. Stumpff of Stumpff & Washburn, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

This appeal involves the last will and testament of Elsie A. Kleeb, who died on August 13, 1979. The county court for Custer County, Nebraska, over the objections of the contestants-appellants, Velma Jezbera and Wilma Askey, daughters of the decedent, admitted the will to probate. On appeal, and over the continued objections of the daughters, the District Court for Custer County, Nebraska, likewise admitted the will to probate. Velma Jezbera and Wilma Askey have now appealed to this court. We likewise find that the will of Elsie A. Kleeb should be admitted to probate and affirm the decision of the District Court for Custer County, Nebraska.

At the time of her death on August 13, 1979, Elsie A. Kleeb· was 83 years of age. She had been predeceased by her husband, William Kleeb, who died in April of 1972. Mrs. Kleeb left surviving two daughters, the appellants Velma Jezbera and Wilma Askey, and a son, the appellee Stewart Kleeb. By

the terms of her will which was executed on June 20, 1974, slightly more than 5 years before her death, Mrs. Kleeb left to each of her daughters the sum of $10, and the balance of her estate, which consisted principally of two farms, to her son, Stewart. The daughters have objected to the admission of the will to probate on the basis that their mother, at the time of the making of her will, was not competent to make such a will and, moreover, was unduly influenced by their brother, Stewart.

The record in this case discloses a story too often told concerning years of bickering and dispute between siblings. Sometime in 1959 Mrs. Kleeb was first diagnosed to have Parkinson's disease. The disease, as it does in most cases, advanced over the years until, by the early 1970s, Mrs. Kleeb was generally confined to a wheelchair, though she could move about in a somewhat limited fashion with the use of a walker. Both she and her husband, who had suffered a stroke in 1965, had been residing in a nursing home in Broken Bow since that time. In 1970 they moved to a nursing home in Sargent, Nebraska, where they lived until Mr. Kleeb died in 1972.

Shortly after Mr. Kleeb's death, Velma Jezbera was appointed as conservator for Mrs. Kleeb. Disputes soon developed among the children concerning the handling of Mrs. Kleeb's properties and affairs, and particularly the rental of some property by Stewart. In April of 1974 a petition was filed, ostensibly by Mrs. Kleeb, requesting that her daughter be discharged as conservator and that her brother, Henry Haumont, be appointed in her place. In May of 1974 Mrs. Kleeb's daughters, Velma Jezbera and Wilma Askey, instituted proceedings in the county court of Custer County, Nebraska, seeking to place their mother under guardianship. This filing apparently disturbed Mrs. Kleeb, because she believed that the daughters were seeking to have her de-

clared "crazy." She stated to a number of people how distressed she was by this action and how offended she was that her daughters were seeking to have her declared insane, though, in truth and in fact, such was not the case.

On June 18, 1974, while both the guardianship and conservatorship matters were then pending in the county court of Custer County, Nebraska, Mrs. Kleeb was taken by her son, Stewart, to Ord, Nebraska, where she was examined by a Dr. Otis W. Miller. The admitted purpose of the examination was to determine whether Mrs. Kleeb was competent to execute a will in view of the fact that there was then a proceeding pending seeking to have her placed under guardianship. On June 18, 1974, Dr. Miller and his colleague, Dr. Paul R. Martin, determined that Mrs. Kleeb was competent and that, other than having Parkinson's disease, she was capable of taking care of her own affairs. The following day, on June 19, 1974, Mrs. Kleeb was taken by her son, Stewart, to Taylor, Nebraska, where Albert F. Alder, an attorney, prepared a will for Mrs. Kleeb. She returned to Taylor, Nebraska, the following day and executed the will which has been admitted to probate as her last will and testament.

Thereafter, on July 5, 1974, pursuant to an order of the county court of Custer County, Nebraska, issued in the guardianship proceedings then pending, Mrs. Kleeb was taken to the Richard Young Memorial Hospital in Omaha, Nebraska, for evaluation as to her mental capacity. While the tests disclosed that Mrs. Kleeb experienced certain motor difficulties by reason of the Parkinson's disease, she showed no evidence of psychosis or mental disease as such and no evidence of gross mental incompetence. The guardianship proceedings were subsequently dismissed by the county court, and Mrs. Kleeb's brother, Henry Haumont, was appointed as conservator in accordance with her wishes.

While the record obviously is in conflict concerning the relationship between Mrs. Kleeb and her daughters, on the one hand, and her son, on the other, the evidence is without contradiction that, at the time of the making of the will in June of 1974, Mrs. Kleeb knew who her children were, knew exactly what property she owned, and knew how she desired to have that property disposed of in the event of her death. The most significant testimony on this point was offered by Charles McCaslin, a nonrelative of Mrs. Kleeb, and by Robert Kleeb, her nephew. Both witnesses testified that in the fall of 1977 Mrs. Kleeb requested that both of them come to see her. She visited with each individually and out of the presence of the other, and told both of them of the exact contents of her will and the fact that she was doing exactly what she desired to do.

We have frequently announced that a person who understands the nature of his acts, the extent of his property, the proposed disposition of it, and the natural objects of his bounty is competent to make a will. See, *In re Estate of Witte,* 145 Neb. 295, 16 N.W.2d 203 (1944); *Spier v. Spier,* 99 Neb. 853, 157 N.W. 1014 (1916).

Furthermore, in *In re Estate of Wahl,* 151 Neb. 812, 814, 39 N.W.2d 783, 786 (1949), we said: "The mental capacity of a testator is tested by the state of his mind at the time he executed his will. If the testator knows the extent and character of his property, the natural objects of his bounty, and the purposes of his devises and bequests, he is mentally competent to make a will."

The evidence in this case amply establishes that at the time Mrs. Kleeb executed her will she met all of the necessary requirements to make her competent to execute a will. Appellants argue that there is evidence to indicate that on certain of the psychological tests performed at the Richard Young Memorial Hospital, Mrs. Kleeb, according to the psy-

chologist, displayed the judgment of one 8 or 9 years of age. The effect of those tests in terms of her mental competence to make a will are not disclosed by the record, nor are we really able to determine the extent of competence by the results of the tests, particularly in view of the fact that Mrs. Kleeb was suffering from advanced Parkinson's disease. The tests do disclose, however, that she met all of the legal requirements for competence insofar as executing a will was concerned. What is disclosed by the record is that in June of 1974 Mrs. Kleeb knew what she was doing. One need not have either an extensive vocabulary or a college degree as a prerequisite to executing a valid will. The evidence simply fails to support a claim that Mrs. Kleeb was not competent to execute a will in June of 1974 when she did in fact execute her will.

Likewise, with regard to the claim that Mrs. Kleeb was unduly influenced by her son, the record again fails to support such a claim. It is obvious that there was a tugging and pulling between the children. It is likewise clear, although perhaps without justification, that Mrs. Kleeb was incensed by her daughters' filing of the guardianship proceedings. Indeed that may have been what motivated her to take the action in 1974 she took, but the 5 years which expired between the time she executed the will and her death did not seem to change her view. In the case of *In re Estate of Bowman,* 143 Neb. 440, 447-48, 9 N.W.2d 801, 805 (1943), we said: "In an action to set aside a will because of improper or undue influence exerted upon the testator, the burden of proof is upon the contestant. . . .

. . . .
" 'Undue influence, in order to invalidate a will, must be of such character as to destroy the free agency of the testator and substitute another person's will for his own.' "

As we have indicated, the evidence in this case

simply does not support such a finding. An individual does not lack testamentary capacity because he holds an unjust prejudice or belief generally regarded as peculiar and unsound. See *In re Estate of Wahl, supra.* In *McDonald v. McDonald,* 207 Neb. 217, 221, 298 N.W.2d 136, 138 (1980), speaking of a gift, we said: " ' "[The] undue influence which will void a . . . (gift) is an unlawful and fraudulent influence which controls the will of the donor. The affection, confidence, and gratitude of a parent to a child which inspires a gift is a natural and lawful influence and will not render it voidable unless such influence has been so used as to confuse the judgment and control the will of the donor." ' "

We further said in *McDonald* at 221, 298 N.W.2d 138-39: " ' "The court, in examining the matter of whether a deed was procured by undue influence, is not concerned with the rightness of the conveyance, but only with determining whether it was the voluntary act of the grantor. The fact that the grantor has others who are proper subjects to receive his bounty can be considered by the court only as it bears upon the validity of the conveyance." [Citation omitted.]' "

What we said in *McDonald* with regard to a gift is likewise applicable with regard to the making of a will.

And, finally, the fact that the attorney who prepared Mrs. Kleeb's will did legal work for her son, Stewart, absent any other evidence, is likewise not decisive. Again, in *McDonald, supra* at 223, 298 N.W.2d at 139, we said: " 'The mere fact that the grantee procures an attorney to prepare the deed does not prove that the deed was obtained by improper means.' " Again, we believe that the same applies with regard to the making of a will.

In reviewing the entire record, we are of the opinion that Mrs. Kleeb was, at the time of the making of her last will and testament, fully competent to make

such will and that the same was not as the result of undue influence, though it may have been as a result of unfair anger. That is not sufficient to cause us to void the will. The trial court was in all respects correct in admitting the will to probate, and the judgment is affirmed.

AFFIRMED.