IN RE ESTATE OF EARL S. PRICE, DECEASED.
ROBERT L. CURTIS AND HAZEL DOLORES CURTIS, APPELLANTS, V.
DEVONA E. PRICE, APPELLEE.

388 N.W.2d 72

Filed June 6, 1986.   No. 85-007.

Laurice M. Margheim, for appellants.

Clark G. Nichols of Winner, Nichols, Douglas and Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Hazel Dolores Curtis and her husband, Robert L., appeal from the denial of probate to the last will executed by the deceased testator, Earl S. Price, the father of Dolores. Because of the terms of an earlier will, the appellee, Devona E. Price, the testator's daughter-in-law, thereby stands to inherit a certain 160-acre parcel of land which the daughter and her husband would have inherited under the last will. The issues presented by the assignments of error of the daughter and her husband are (1) whether the trial court properly instructed the jury and (2) whether the evidence is such that the trial court should in any event have sustained the motion of the daughter and her husband to direct a verdict in their favor. We reverse and remand with the direction that judgment be entered admitting the last will of the testator to probate.

## THE EVIDENCE

The testator died a widower on May 24, 1984, at 90 years of age, seized of various lands in Box Butte County. In a will executed May 20, 1981, he devised certain of those lands, including the 160-acre parcel in question, to his daughter-in-law and devised certain other lands to his daughter and her husband. In his last will, executed December 11, 1981, the testator devised the disputed 160-acre parcel to his daughter and her husband instead of to his daughter-in-law. The other provisions of that last will were the same as those of the earlier will.

The parties stipulated that the testator was possessed of testamentary capacity when both wills were executed and that both wills were executed in the manner provided by law. The daughter-in-law contends, however, that the last will was the result of the undue influence exerted over the testator by his daughter and her husband. The parties also stipulated that if the last will was the product of undue influence, no objections would be lodged to the probate of the May will.

The evidence reveals that the testator's daughter-in-law and his son, Harold, were married in 1948 and that they lived on

land adjacent to the disputed 160 acres until the son's death in April 1981, after which time the daughter-in-law continued to live on that land. The evidence also establishes that both of testator's children and their spouses farmed the testator's lands, that the daughter-in-law continued to do so after the son's death, and that the testator had made inter vivos conveyances of some of his land holdings to both of his children and their respective spouses.

In June 1978 the son asked the testator to sign a mortgage on some land, which the testator did. Thereafter, the testator became unhappy about the amount of debt his son was incurring and the fact that he had not been told about the indebtedness. The testator also became concerned about his liability on the mortgage he had signed but was advised by his then attorney that he had no personal liability on the mortgage note, advice which was later confirmed by another attorney.

In the fall of 1978 the testator had a leg amputated. At that time his daughter and her husband moved in with him and took care of the testator until after Christmas of that year, when he entered a hospital. After leaving the hospital, he went to a convalescent center, where he stayed until 1982, and then moved to a nursing home, where he remained until his death.

Since the testator was unable to drive and to get around very well after he lost his leg, his daughter continued to run errands for him and to transport him. She had authority to write checks on the testator's account in order to help him take care of his bills, which she went over with him on a monthly basis. The testator was kept informed of all the deposits made to his account, and his daughter and her husband helped the testator with his business affairs.when asked. The testator trusted and relied upon the information the daughter's husband gave him.

On the 4th of July following his son's death, the testator was driven by his daughter and her husband around the farm the daughter-in-law was leasing from the testator. Thereafter, the testator berated his daughter-in-law for the condition of the farm, which, according to the daughter-in-law's son, was not in bad condition. Nonetheless, according to the daughter-in-law, her relationship with the testator deteriorated after that incident.

According to the daughter-in-law, the daughter would not allow the testator to accompany the daughter-in-law and her children to his son's funeral; rather, the daughter and her husband took him. The testator refused to attend his son's funeral service, electing to remain in his daughter's car instead.

At some point the testator came to believe that he had not received all of his landlord's share of the wheat from the 1980 crop harvested by his son. According to the daughter-in-law, the testator's share of the wheat had been moved for storage so that it would not be commingled with his son's. She thought that although the testator seemed relatively satisfied with that explanation, he never really fully understood the situation, as he continued to question the matter from time to time.

In the fall of 1981 the testator was brought to the daughter-in-law's farm by his daughter and her husband, at which time the testator demanded some lumber about which the daughter-in-law had no knowledge.

The attorney who represented the testator until he began to represent the daughter-in-law in the handling of her husband's estate, and who initially advised the testator concerning the lack of personal liability on the mortgage note, was of the opinion the testator could have been susceptible to undue influence. He based that notion on the fact that the testator questioned him and was confused about conveyances he had made several years in the past. Further, in 1981, while the testator expressed concern over his son's finances, he at the same time cut back the amount of land he allowed the son to farm. This action appeared inconsistent to the attorney. This attorney also testified that the testator told him his daughter had expressed the thought that the attorney might have a conflict of interest in representing both the testator and his deceased son's estate, but the daughter denied doing so.

The daughter testified she did not give her father advice, as she respected the fact that he knew what he wanted and how he wanted to go about things. She did not feel giving her father advice would "have done me any good."

The attorney the testator consulted after the death of the son, and who confirmed the first attorney's advice concerning the lack of personal liability on the mortgage note, testified that the

testator was an independent thinker with a sharp mind who would listen to what others had to say but who made up his own mind. The testator was, in this attorney's opinion, determined and clearheaded and knew what he was doing. Although his daughter and her husband took the testator to the attorney's office, it was the testator who supplied the information. This attorney's records reflected, however, that he had talked with the testator's daughter and her husband from time to time in the course of preparing wills for the testator, which, according to the son-in-law, was for the purpose of providing legal descriptions. This attorney did no legal work for the daughter or her husband and consulted privately with the testator. While the daughter's husband took the testator to the lawyer's office to execute the last will, he waited in the anteroom and was not present at its execution. It was the daughter who, without reading it, put the sealed last will in the testator's safe-deposit box.

The testator had told both his first attorney and his accountant he feared that if he were to leave the disputed 160-acre parcel to his daughter-in-law, she would lose it because of her indebtedness and that the land would thereby pass out of the family.

The physician who cared for the testator over a period of 30 years and saw him approximately once a month from 1977 to his death said the testator's mental condition was always sound and that the testator was mentally alert.

THE JURY INSTRUCTIONS

Because they bear on the evaluation of the evidence, we address the complaints of the daughter and her husband concerning the instructions to the jury relating to the quantum of evidence required to prove the exercise of undue influence of such a character as to vitiate a will and the role of circumstantial evidence in satisfying that requirement.

Standard of Proof

The daughter and her husband first complain that the trial court instructed the jury that such undue influence must be proved by a preponderance of the evidence rather than by clear and convincing evidence.

A review of our cases reveals that, in the main, we have stated

that undue influence such as to vitiate a will must be proved by a preponderance of the evidence. *Spinar v. Wall*, 191 Neb. 395, 215 N.W.2d 98 (1974); *Cook v. Ketchmark*, 174 Neb. 222, 117 N.W.2d 375 (1962); *Benge v. Sutton*, 169 Neb. 769, 100 N.W.2d 857 (1960); *Buchanan v. Zorn*, 169 Neb. 396, 99 N.W.2d 773 (1959); *Reynolds v. Knott*, 164 Neb. 365, 82 N.W.2d 568 (1957); *In re Estate of Fehrenkamp*, 154 Neb. 488, 48 N.W.2d 421 (1951); *In re Estate of Thompson*, 153 Neb. 375, 44 N.W.2d 814 (1950); *In re Estate of Farr*, 150 Neb. 67, 33 N.W.2d 454 (1948), *on rehearing* 150 Neb. 615, 35 N.W.2d 489 (1949). We have, however, on at least one occasion aberrantly said that such proof must be by clear and convincing evidence. *In re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735 (1984).

On the other hand, as the daughter and her husband point out, when concerned with conveyances of real estate, we have generally said that undue influence must be proved by clear and convincing or clear and satisfactory evidence. *Bishop v. Hotovy*, 222 Neb. 623, 385 N.W.2d 901 (1986); *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983); *McDonald v. McDonald*, 207 Neb. 217, 298 N.W.2d 136 (1980); *Biggerstaff v. Ostrand*, 199 Neb. 808, 261 N.W.2d 750 (1978); *Rule v. Roth*, 199 Neb. 746, 261 N.W.2d 370 (1978); *Golgert v. Smidt*, 197 Neb. 667, 250 N.W.2d 628 (1977); *Guill v. Wolpert*, 191 Neb. 805, 218 N.W.2d 224 (1974); *Eggert v. Schroeder*, 158 Neb. 65, 62 N.W.2d 266 (1954); *Gidley v. Gidley*, 130 Neb. 419, 265 N.W. 245 (1936). Again, however, we have on at least one occasion departed from that language and improvidently stated the requirement to be proof by a preponderance of the evidence. *Gaeth v. Newman*, 188 Neb. 756, 199 N.W.2d 396 (1972).

The daughter and her husband argue that a will is entitled to no less respect than is a document conveying real estate and that the quantum of proof to establish undue influence should be by clear and convincing evidence in either instance.

The reason for the different treatment rests, however, not on the nature of the instruments involved, both of which are of equal dignity, but in the nature of the causes of action involved.

The probate of a will is an action at law, see *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981), whereas an action to set aside a conveyance of real estate because of undue

influence is one in equity, *Craig v. Kile, supra.*

Undue influence is not dissimilar to fraud. See, *Bishop v. Hotovy, supra, In re Estate of Saathoff. Saathoff v. Saathoff,* 206 Neb. 793, 295 N.W.2d 290 (1980), and *In re Estate of Kleeb,* 211 Neb. 763, 320 N.W.2d 459 (1982), wherein we stated that the undue influence which will void a gift is a fraudulent influence. See, also, *Eggert v. Schroeder, supra,* which defines the undue influence which will avoid a deed to be an unlawful or fraudulent influence. Historically, we have required fraud to be proved in equity cases by clear and convincing or clear and satisfactory evidence, but by a preponderance of the evidence in law actions. *Tobin v. Flynn & Larsen Implement Co.,* 220 Neb. 259, 369 N.W.2d 96 (1985).

Thus, we conclude that in an action to probate a will, undue influence is to be proved by a preponderance of the evidence. To the extent *In re Estate of Massie, supra,* states otherwise, it is disapproved.

Role of Circumstantial Evidence

The daughter and her husband next contend the jury should have been instructed, as they requested, that circumstantial evidence which is consistent with any hypothesis other than that the will was the result of undue influence, standing alone, is insufficient to vitiate a will.

This contention was rejected in *In re Estate of Farr, supra.* Therein, the proponent of the will requested an instruction, the relevant portions of which read:

> "You are further instructed that if you can reasonably draw contrary or opposing inferences from the facts as you find them on the evidence, one inference which might lead to a supposition of undue influence and a contrary inference that no undue influence was exerted by Clifford Farr, your verdict should be in favor of the proponent * * * ."

150 Neb. at 620, 35 N.W.2d at 492.

Recognizing that the law recited in the requested instruction was in accord with its prior decisions, the *Farr* court nonetheless determined the trial court had not erred in refusing the tendered instruction and overruled its prior decisions to the contrary. In doing so the court reasoned:

To hold that a hypothesis or inference that there was no undue influence is sufficient to defeat a contest of a will on the ground of undue influence would be to deny to a contestant the right to have his evidence weighed in its own light and in the light of reasonable inferences to be drawn from it.

This ought not to be true especially in the light of what usually confronts the court in a case of this kind as pointed out in In re Estate of Noren, *supra*, as follows: "Undue influence * * * is usually surrounded by all possible secrecy. It is almost always difficult to prove by direct and positive proof. It is largely a matter of inferences from facts and circumstances surrounding the testator, his life, character, and mental condition, as shown by the evidence, and the opportunity afforded designing persons for the exercise of improper control."

150 Neb. at 622-23, 35 N.W.2d at 493-94.

However, in *Gaeth v. Newman*, 188 Neb. 756, 764, 199 N.W.2d 396, 402 (1972), an action to set aside a deed because of undue influence, we said:

While circumstantial evidence may be sufficient, the circumstances must not be equally consistent with some other rational theory deducible from the facts proved. . . . In order to establish undue influence invalidating a deed, there must be proof that the circumstances of its execution were inconsistent with any hypothesis but undue influence, which must be proved in connection with the conveyance in suit, and not with other things.

A recent pronouncement on the role of circumstantial evidence in civil cases appears in *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985), a suit on a policy of insurance. We said therein:

[C]ircumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom.

*Id*. at 4-5, 360 N.W.2d at 491.

This pronouncement is consistent with a long line of earlier decisions. *Fritz v. Marten*, 193 Neb. 83, 225 N.W.2d 418 (1975) (negligence action); *Wilgro, Inc. v. Vowers & Burback*, 190 Neb. 369, 208 N.W.2d 698 (1973) (negligence action); *Vietz v. Texaco, Inc.*, 189 Neb. 514, 203 N.W.2d 513 (1973) (negligence action); *Haynes v. County of Custer*, 186 Neb. 740, 186 N.W.2d 483 (1971) (negligence action); *Norcross v. Gingery*, 181 Neb. 783, 150 N.W.2d 919 (1967) (suit to establish interest in real estate, for partition, and for accounting); *Popken v. Farmers Mutual Home Ins. Co.*, 180 Neb. 250, 142 N.W.2d 309 (1966) (suit on insurance policy); *Mills v. Bauer*, 180 Neb. 411, 143 N.W.2d 270 (1966) (negligence action); *Baer v. Schaap*, 171 Neb. 347, 106 N.W.2d 468 (1960), *appeal dismissed* 172 Neb. 414, 109 N.W.2d 724 (1961) (negligence action); *Shamblen v. Great Lakes Pipe Line Co.*, 158 Neb. 752, 64 N.W.2d 728 (1954) (suit on contract). For more recent statements to the same effect, see *ServiceMaster Indus. v. J.R.L. Enterprises, post* p. 39, 388 N.W.2d 83 (1986).

It is obvious, therefore, that *In re Estate of Farr*, 150 Neb. 67, 33 N.W.2d 454 (1948), *on rehearing* 150 Neb. 615, 35 N.W.2d 489 (1949), does not view the role of circumstantial evidence in the same manner as do our other decisions in cases both at law and in equity.

It is true, as *In re Estate of Farr, supra, Andersen v. Andersen*, 177 Neb. 374, 128 N.W.2d 843 (1964), and *Cook v. Ketchmark*, 174 Neb. 222, 117 N.W.2d 375 (1962), observe, that the exercise of undue influence is usually surrounded by all possible secrecy, rendering it difficult to prove. The fact that the exercise of undue influence is difficult to prove, however, does not mean that the party seeking to establish such influence has met his or her burden by proving circumstances from which it may be inferred equally that such took place or that such did not take place. Certainly, a party seeking to prove the exercise of undue influence is entitled to an evaluation of all the circumstances proved, together with all the reasonable inferences to be drawn therefrom, *Andersen v. Andersen, supra, Cook v. Ketchmark, supra*, and *In re Estate of Farr, supra*; but if all the evidence is circumstantial and the inferences to be drawn therefrom are as equally consistent with the

hypothesis that undue influence was not exercised as they are with the hypothesis that such influence was exercised, the burden of proving the exercise of undue influence by a preponderance of the evidence has not been met. To the extent *In re Estate of Farr, supra*, is inconsistent with this holding, it is disapproved.

## EVALUATION OF THE EVIDENCE

With that background we are in a position to evaluate the evidence. We begin our analysis of whether the motion for a directed verdict should have been sustained by recalling that upon such a motion, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed and that the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom. *Fuel Exploration, Inc. v. Novotny*, 221 Neb. 17, 374 N.W.2d 838 (1985).

We must also be mindful of the fact that not every exercise of influence will vitiate a will; it is the exercise of *undue* influence which does so. Undue influence sufficient to defeat a will is such manipulation as destroys the free agency of the testator and substitutes another's purpose for that of the testator. See, *In re Estate of Kleeb*, 211 Neb. 763, 320 N.W.2d 459 (1982); *Andersen v. Andersen, supra*. See, also, *Bishop v. Hotovy*, 222 Neb. 623, 385 N.W.2d 901 (1986).

The elements which must be proved in order to vitiate a will on the ground of undue influence are that (1) the testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the result was clearly the effect of such influence. *Spinar v. Wall*, 191 Neb. 395, 215 N.W.2d 98 (1974); *Cook v. Ketchmark, supra*.

In evaluating the evidence and the proper inferences to be drawn therefrom, it is not necessary to separate each fact supported by the evidence and allocate it under one or more of the foregoing four essential elements requisite to establish the exercise of undue influence; rather, the trier of fact is to view the entire evidence and rest the decision upon whether the evidence as a whole is of such a nature as to prove each of the elements.

*Andersen v. Andersen, supra.* That method of analysis reveals that the evidence is insufficient as a matter of law to warrant submission of the case to the jury.

The evidence establishes without question that the daughter and her husband had the opportunity to exert undue influence upon the testator; they spent a great deal of time with him; they helped him with his affairs; and he trusted the daughter's husband.

However, even accepting the first lawyer's testimony that the testator was confused about past conveyances as evidence that the latter was subject to such influence, there is no evidence as to the existence of the two remaining elements of undue influence.

There is nothing of probative value from which it can be inferred that the daughter or her husband had a disposition to exert such influence. While the daughter-in-law points to the testator's July 4 and fall of 1981 visits to her, there is nothing to indicate who instigated these visits. Even if the daughter suggested the testator seek an attorney other than the one handling his son's estate, suggesting that one seek independent advice can hardly be said to be the exercise of undue influence. There is no suggestion that the daughter or her husband threatened to withhold affection or help if the testator did not change his will or that the daughter or her husband asked the testator to do any specific thing with his holdings.

Neither is there anything of probative value from which it can be inferred that the disposition of the disputed 160-acre parcel is clearly the effect of undue influence. Indeed, the uncontradicted evidence is that the testator had a long-term concern about his daughter-in-law's finances. Moreover, the testator continued to express his concern that leaving the disputed 160-acre parcel to his daughter-in-law was tantamount to leaving it to her creditors.

As the evidence was insufficient as a matter of law to permit the jury to find the existence of each and every element of undue influence, the trial court should have sustained the motion of the daughter and her husband for a directed verdict.

## DECISION

We reverse the judgment of the trial court and remand for the

entry of a judgment admitting the last will of the testator to probate.

REVERSED AND REMANDED WITH DIRECTION.

WHITE, J., participating on briefs.

KRIVOSHA, C.J., concurring in the result.

For reasons in part more particularly set out in my separate concurrence filed in *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985), I concur in the result in this case. While I agree with the result reached by the majority, I do not agree with the majority's conclusion that:

> [C]ircumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the *only one* that can fairly and reasonably be drawn therefrom.

(Emphasis supplied.) I concede that there are cases to be found in Nebraska to support the statement made by the majority herein. I suggest, however, that there are cases to be found in Nebraska to support at least four different lines of authority. For a complete examination of the entire question, see Fenner, *Circumstantial Evidence in Nebraska*, 19 Creighton L. Rev. 236 (1986).

An examination of our previous decisions discloses that the rule that circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom, appears to have had its inception in the case of *Blid v. Chicago & N. W. R. Co.*, 89 Neb. 689, 131 N.W. 1027 (1911). Interestingly enough, *Blid v. Chicago & N. W. R. Co.* was overruled in 1956 in the case of *Davis v. Dennert*, 162 Neb. 65, 73, 75 N.W.2d 112, 118 (1956), wherein we said:

> "Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the

negligent act charged."

We then said in *Davis v. Dennert, supra* at 74-75, 75 N.W.2d at 119, quoting from *Duncan v. Fort Dodge G. & E. Co.*, 193 Iowa 1127, 188 N.W. 865 (1922):

"Appellant makes the point that, to sustain plaintiff's charge of negligence by circumstantial evidence, the circumstances shown must be such as are wholly inconsistent with any other reasonable theory of the death of the deceased. It may be admitted that cases are to be found, and possibly some of our own, in which the rule is stated as quoted by counsel. It is, nevertheless, a misleading statement, as applied to disputed facts in a civil action. In its broadest sense, it has no proper application except in criminal cases where the evidence relied upon to establish the alleged crime is purely circumstantial."

We then went on in *Davis, supra* at 75, 75 N.W.2d at 119, to say:

We think the rule as announced in Blid v. Chicago & N. W. Ry. Co., *supra*, should only have application in criminal cases where the proof of guilt must be established beyond a reasonable doubt while the rule announced in Rocha v. Payne, *supra*, has application in civil cases where all that is required of plaintiff is to establish his cause of action by a preponderance of the evidence.

In *Rocha v. Payne*, 108 Neb. 246, 187 N.W. 804 (1922), we had said:

Negligence is a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of.

(Syllabus of the court.)

Even though *Blid v. Chicago & N. W. R. Co., supra,* was overruled in *Davis v. Dennert, supra*, in 1964 the *Blid* rule appeared again in *Wolstenholm v. Kaliff*, 176 Neb. 358, 126 N.W.2d 178 (1964), as if it had always existed without question. In *Wolstenholm, supra* at 364-65, 126 N.W.2d at 182, we said: "The second rule is that circumstantial evidence sufficient to

submit an issue of negligence to a jury must be such that a reasonable inference arises showing that the person charged was negligent and that such inference is the only one that reasonably can be drawn therefrom." In support of that statement the case of *Bedford v. Herman*, 158 Neb. 400, 63 N.W.2d 772 (1954), was cited. This, of course, was a case decided before *Davis v. Dennert, supra*, which overruled that rule of law. We, therefore, now have the strange anomaly that, while in *Davis v. Dennert* we eliminated the "only reasonable hypothesis rule" as it applied to civil cases and left it applicable only in criminal cases, we now have eliminated the rule in criminal cases, see *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), and reinstated the rule in civil cases.

To add to the problem, an examination of the case which gave birth to the "only reasonable hypothesis rule," *Blid v. Chicago & N. W. R. Co.*, 89 Neb. 689, 131 N.W. 1027 (1911), gives no analysis of why the rule is adopted, citing as its authoritative support three cases which, in effect, do not stand for the proposition created in *Blid*.

It occurs to me that if a judgment based solely upon circumstantial evidence is not sufficient to stand unless the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom, then the party relying upon the circumstantial evidence is entitled to a directed verdict. See *Wolstenholm v. Kaliff, supra* (White, C.J., concurring).

As noted by Professor Fenner in his article on circumstantial evidence:

> If the plaintiff's contention is the *only* reasonable one, then a verdict should be directed for the plaintiff. If the plaintiff's contention is not the only reasonable one, then the *Blid* rule says that the plaintiff cannot win; therefore, a verdict should be directed for the defendant; and therefore there will be no jury instructions. The *Blid* rule says that circumstantial evidence will not support a verdict unless it supports a directed verdict; it does not prove any essential element, unless it proves that the plaintiff is entitled to a directed verdict.

Fenner, *Circumstantial Evidence in Nebraska*, 19 Creighton L.

Rev. 236, 245 (1986).

Professor McCormick, speaking about the "only reasonable hypothesis rule," has said that such a rule "seems misplaced in civil litigation. It leaves little for the jury and far exceeds what is needed to prevent verdicts based upon speculation and conjecture." McCormick on Evidence § 338 at 954 (E. Cleary 3d ed. 1984).

We appear to have further adopted a second line of cases which does not require that the circumstantial evidence be such that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom but, rather, requires that the circumstantial evidence indicate the ultimate fact with "reasonable certainty." An example of this rule is *Rocha v. Payne*, 108 Neb. 246, 249, 187 N.W. 804, 805 (1922), wherein we said:

> Negligence is a question of fact, and, like any other fact, may be established by circumstantial evidence. All that the law requires is that the facts proved, together with the inferences that may be legitimately drawn from them, shall indicate with reasonable certainty the existence of the negligence complained of.

It is this second line of cases which has given rise to the standard Nebraska jury instruction which reads as follows:

> A fact may be proved either by direct evidence or circumstantial evidence, or both. Circumstantial evidence is proof of certain facts and circumstances from which one may reasonably infer other related or connected facts which naturally and logically follow according to common experience of mankind.
>
> Negligence is a question of fact and may be proved by circumstantial evidence. However, the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicate with reasonable certainty the negligent act charged.

NJI 1.31.

Nowhere in the standard jury instructions do we find an instruction on the "only reasonable hypothesis rule."

I am inclined to believe that this is indeed the proper rule and

provides, in effect, that if the evidence is evenly balanced, the party having the burden does not succeed.

A third line of cases appears to have begun with *Markussen v. Mengedoht*, 132 Neb. 472, 272 N.W. 241 (1937), and was most recently reannounced in the case of *Chmelka v. Continental Western Ins. Co.*, 218 Neb. 186, 352 N.W.2d 613 (1984). The rule as announced in *Chmelka, supra* at 192, 352 N.W.2d at 618, is: "The burden of establishing a cause of action by circumstantial evidence requires that the evidence be of such character and the circumstances so related to each other that a conclusion fairly and reasonably arises that the cause of action has been proved." This is not the same as requiring that the conclusion be the only one that can fairly and reasonably be reached.

There also appears to be a fourth line of cases, to some extent reflected by the majority opinion herein, which combines one or more of the other two rules.

Syllabus No. 3 herein correctly reflects what should be the rule of law regarding circumstantial evidence by providing that

if all the evidence is circumstantial and the inferences to be drawn therefrom are as equally consistent with the hypothesis that undue influence was not exercised as they are with the hypothesis that such influence was exercised, the burden of proving the exercise of undue influence by a preponderance of the evidence has not been met.

In effect, what this says is that if the evidence is evenly balanced, the party with the burden of proof has not met that burden. That is true even with regard to direct evidence. Unfortunately, however, the majority also cites the opposing rule from *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 4-5, 360 N.W.2d 488, 491 (1985), to the effect that

circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom.

This appears to me to be inconsistent.

In my view, circumstantial evidence should be afforded the

same significance as direct evidence, and the jury should then be advised that the burden is upon the plaintiff to prove his or her case by a preponderance of the evidence. This means that if the evidence, as weighed by a judge or jury, is equally balanced, the plaintiff has failed. That is all that we do with regard to direct evidence, and, in my view, that is all we ought to do with regard to circumstantial evidence. In the instant case the evidence was equally balanced, and, therefore, the appellee failed to sustain her burden of proof.

SHANAHAN, J., joins in this concurrence.